No. 23-6334

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

RICKY VINCENT PENDLETON,

*Plaintiff-Appellant,*

v.

BETSY C. JIVIDEN, Commissioner WV Division of Corrections and
Rehabilitation; CLARENCE J. RIDER, Religious Service Director,
WV Division of Corrections and Rehabilitation; DONNIE AMES,
Mount Olive Correctional Complex and Jail,

*Defendants-Appellees.*

———————————————

On Appeal From The United States District Court for the Southern
District of West Virginia, Case No. 2:22-cv-00178
The Hon. Joseph R. Goodwin

———————————————

**OPENING BRIEF OF APPELLANT**

———————————————

Samuel David Kinder Weiss
RIGHTS BEHIND BARS
416 Florida Ave NW
  Suite 26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

Ginger D. Anders
Helen E. White
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
  Suite 500 E
Washington, DC 20001
(202) 220-1100
Helen.White@mto.com

*Counsel for Ricky Vincent Pendleton*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

JURISDICTIONAL STATEMENT ................................................................1

INTRODUCTION ........................................................................................1

STATEMENT OF THE ISSUES...................................................................3

STATEMENT OF THE CASE.......................................................................3

      A.    Factual Background.........................................................3

      B.    Procedural History...........................................................8

STANDARD OF REVIEW ..........................................................................15

ARGUMENT ..............................................................................................16

I.    PLAINTIFF'S COMPLAINT STATES A CLAIM UNDER RLUIPA .......17

      A.    Pendleton Plausibly Alleged That the Diet Program
            Substantially Burdens His Sincerely Held Religious Beliefs. ...........18

      B.    Pendleton Has Plausibly Alleged That Defendants' Conduct
            Does Not Further A Compelling Governmental Interest by the
            Least Restrictive Means. ..................................................24

II.    PLAINTIFF'S COMPLAINT STATES A CLAIM UNDER THE
     FREE EXERCISE CLAUSE........................................................26

III.   THE COURT SHOULD VACATE AND REMAND THE DISTRICT
     COURT'S DECISION ON THE MOTION TO SEVER.............................29

CONCLUSION ...........................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................15

*Beerheide v. Suthers*,
  286 F.3d 1179 (10th Cir. 2002) ..........................................................23

*Blair v. Raemisch*,
  804 F. App'x 909 (10th Cir. 2020) .......................................................20

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)......................................................................17, 22

*Carter v. Fleming*,
  879 F.3d 132 (4th Cir. 2018) ........................................................passim

*Coleman v. Jones*,
  No. 20-7382, 2022 WL 2188402 (4th Cir. June 17, 2022) ...................18, 19, 21

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ..........................................................27

*Goines v. Valley Community Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ...............................................................4

*Greenhill v. Clarke*,
  944 F.3d 243 (4th Cir. 2019) ..............................................................27

*Houck v. Substitute Trustee Serv., Inc.*,
  791 F.3d 473 (4th Cir. 2015) ..............................................................15

*Jehovah v. Clark*,
  798 F.3d 169 (4th Cir. 2015) ......................................................passim

*Jones v. Carter*,
  915 F.3d 1147 (7th Cir. 2019) .......................................................22, 23

*LaVergne v. Stutes*,
  No. 19-30842, 2021 WL 2877789 (5th Cir. July 8, 2021) .................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

*Lolavar v. de Santibanes*,
    430 F.3d 221 (4th Cir. 2005) ...............................................................23

*Love v. Reed*,
    216 F.3d 682 (8th Cir. 2000) ...............................................................23

*Lovelace v. Lee*,
    472 F.3d 174 (4th Cir. 2006) ......................................................passim

*Moussazadeh v. Texas Dep't of Criminal Justice*,
    703 F.3d 781 (5th Cir. 2012) ...............................................................22

*Progressive N. Ins. Co. v. Y.E.*,
    No. 20-2191, 2022 WL 670871 (4th Cir. Mar. 7, 2022) ....................23

*Richardson v. Clarke*,
    52 F.4th 614 (4th Cir. 2022) ..............................................13, 17, 18

*Ross v. Blackledge*,
    477 F.2d 616 (4th Cir. 1973) .......................................................19, 21

*Sherbert v. Verner*,
    374 U.S. 398 (1963)..............................................................................18

*Stevens v. Holler*,
    68 F.4th 921 (4th Cir. 2023) ........................................................15, 22

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
    450 U.S. 707 (1981)........................................................................18, 19

*Turner v. Safley*,
    482 U.S. 78 (1987)................................................................................27

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014) .......................................................24, 28

*Wall v. Wade*,
    741 F.3d 492 (4th Cir. 2014) .......................................................19, 28

## TABLE OF AUTHORITIES

**Page(s)**

*Wilcox v. Brown*,
877 F.3d 161 (4th Cir. 2017) ...................................................................16

*Williams v. Annucci*,
895 F.3d 180 (2d Cir. 2018) ...................................................................20

*Wright v. Lassiter*,
921 F.3d 413 (4th Cir. 2019) .........................................14, 17, 26, 27

*Yellowbear v. Lampert*,
741 F.3d 48 (10th Cir. 2014) .........................................14, 26, 28

**FEDERAL STATUTES**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

42 U.S.C. § 1983 ...................................................................................8

42 U.S.C. § 2000cc-1 ...................................................12, 14, 24

42 U.S.C. § 2000cc-2(b) ...................................................17, 24

**RULES - OTHER**

Fed. R. Civ. P. 10(c)...........................................................................4

Fed. R. Civ. P. 12(b)(6)...........................................................15, 16

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Pendleton's federal statutory and constitutional claims under 28 U.S.C. § 1331. On March 21, 2023, the district court granted Defendants' motion to dismiss and denied Pendleton's motion to sever him from the religious diet program. On April 4, 2023, Pendleton filed his timely notice of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

Plaintiff Ricky Pendleton is a devout Muslim who adheres to a form of Sufism called the God Centered Culture of Islam. He has alleged that, as part of his religious observance, he cannot eat meat or soy products. He also alleges that he suffers from severe gastrointestinal distress when he consumes soy due to an allergy to all soy products. Despite these plausibly alleged religious and medical dietary restrictions, Defendants have repeatedly rebuffed his requests for a diet that is free of both meat and soy, and that provides adequate nutrition. They instead have offered him the "choice" between the "regular tray"—which primarily derives its protein from meat—and the "New Religious Special Diet Program" (Religious Diet Program)—which primarily derives its protein from soy. Because he cannot eat the primary source of protein in either of these diets, Pendleton alleges that he now consumes only a little more than half the daily calories of other prisoners and does not receive adequate protein. Pendleton claims Defendants' refusal to provide him with a diet

1

that is both nutritionally adequate and religiously compliant violates his religious exercise rights guaranteed by both the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the U.S. Constitution's Free Exercise Clause.

The district court dismissed Pendleton's claims on the unsupportable ground that this coercive choice between religious observance and adequate nutrition did not "substantially burden" Pendleton's religious exercise. In so doing, the district court departed from this Court's precedents holding that prisons substantially burden the religious exercise of prisoners when they fail to provide a diet that is both nutritionally adequate and religiously compliant. In repeatedly reaffirming that rule, this Court recognized that the inability to receive adequate nutrition through prison meals imposes precisely what both RLUIPA and the Free Exercise Clause guard against: impermissible "pressure" on a religious adherent to eschew their religious beliefs in order to receive an indispensable government benefit.

Because the district court disregarded this Court's precedents and applied an erroneous standard that does not adequately protect the religious liberty interests of incarcerated people like Pendleton, this Court should reverse the district court's dismissal of Pendleton's RLUIPA and Free Exercise Claims. And, because the district court relied on that same flawed analysis in denying Pendleton's motion seeking severance from the diet plan that did not provide him adequate nutrition, this

2

Court should vacate that order and remand to the district court for further consideration of that motion.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in holding that Pendleton had failed to state a claim under RLUIPA when he alleged that Defendants refused to provide him with a religiously compliant, nutritionally adequate diet, which the prison concedes it would provide to prisoners for medical, but not religious, reasons.

2. Whether the district court erred in holding that Pendleton had failed to state a claim under the Free Exercise Clause when he alleged that Defendants refused to provide him with a religiously compliant, nutritionally adequate diet that contains neither meat nor soy, which the prison concedes it would provide to prisoners for medical, but not religious, reasons.

3. Whether the district court erred in denying Pendleton's motion to sever him from the religious special diet program on the ground that Pendleton had failed to state any claims in his complaint.

## STATEMENT OF THE CASE

### A.    Factual Background

Unless otherwise noted, the following factual background is taken from the allegations Pendleton made in his pro se complaint and its attachments. Those attachments include a document styled as a "memorandum of law in support" of Pendleton's complaint, JA065, which Pendleton incorporates in his complaint,

JA009, and 53 pages of exhibits such as medical records, accommodations requests, and an affidavit from Pendleton, JA012-064. These attachments contain additional allegations that are incorporated by reference in Pendleton's complaint and must be taken as true at the motion to dismiss stage.[1] *See Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (explaining that courts must "also consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits" when evaluating a motion to dismiss (citations omitted)); *see also* Fed. R. Civ. P. 10(c).

Pendleton is a devout Muslim who practices a God Centered Culture of Islam and follows the traditions of Sufi Islam. JA008. While this is one of the many sects of Islam, it is distinct from the Sunni and Shi'ite sects that are the two most common sects around the world and in the United States. As Pendleton explained in a July 7, 2014 request for religious accommodation, under the "Sufi Original Traditions" "[v]egetarianism promotes compassion and harmlessness to l[i]ving creatures." JA040. Therefore, his diet consists of eating only "vegetables and fruits and certain fish," which "aids in the purification of the mind, body and reparation of mental/inner self." JA040. He may also eat dairy products. JA073.

---

[1] For ease of reference, these three documents together shall be referred to as "the complaint".

4

Pendleton also has a severe soy allergy, and he experiences vomiting, abdominal pain, constipation, and other digestive issues when he consumes food products containing soy. JA022, JA023, JA031. Pendleton's medical record extensively documents his allergy to soy and his attempts to receive treatment for allergy-induced symptoms. *See, e.g.*, JA022 (referring to his allergy-related symptoms as "very drastic"), JA023 (describing "constipation and diarrhea when eating the preparation of soy protein/products"), JA024 (explaining that he is "still having constipation problems after ingesting soy protein/product along with other reactions, pains, nausea"). Pendleton has also long maintained that his inability to digest soy products makes those foods "haram"—i.e., religiously forbidden. *See* JA040.

Pendleton is currently incarcerated at the Mount Olive Correctional Complex (MOCC) in West Virginia. At least as of March 2007, Pendleton has consistently requested a "no flesh" religious diet, specifying that he does not consume beef, turkey, chicken, or any other animal, but does consume fish under 50 pounds. JA016.

In May 2014, the West Virginia Division of Corrections and Rehabilitation (WVDCR) introduced the Religious Diet Program, pursuant to Policy Directive § 511.00. The Diet Program provided that the WVDCR would offer only a single "religious special diet," which would "never" include meat or fish and which was

5

"not intended to provide everything an inmate of any faith may eat," but rather was "intended to provide a nutritionally adequate meal that meets dietary *restrictions* imposed by various beliefs." JA044 (emphasis added). That is, the Diet Program was "designed to observe the dietary restrictions prohibiting certain food items or groups of food items," but "[n]o attempt" would be made to "provide and serve every food item a particular religion may allow." JA046. The single religious special diet was specifically intended to accommodate adherents of the Hare Krishna religion, who cannot eat meat, eggs, onions and other alliums, or mushrooms and other fungi. JA043. Pendleton alleges that, as a result, soy-based protein sources are served "95%" of the time. JA067.

In July 2014, Mr. Pendleton sought a religious accommodation from the Diet Program. According to the complaint, he explained in that request that he "[C]annot eat raw soy; texturized soy protein; fermented soy products; and any other processed soy products, due to having digestive problems such as nausea; abdominal pain; vomiting; and constipation. For this reason it is considered 'Haram'"—i.e., religiously forbidden. JA040. He went on to explain that his "way of life is that of the Sufi Original Traditions" and that "[v]egetarianism promotes compassion and harmlessness to l[i]ving creatures." JA040. His diet consists of eating only "vegetables, fruits and certain fish," which "aids in the purification of the mind, body and the reparation of mental/inner-self." JA040. Because soy products make him

ill, they are inconsistent with a diet that "aids in the purification of the . . . body." JA040. He also cited "Weston A. Price Foundation[,] The Old Original traditions of the Sufi Order" to explain the "religious significance of why I cannot digest any soy product." JA040. Prison officials did not accommodate his request.

On September 8, 2014, Mr. Pendleton again sought medical attention for his soy allergy. He alleges that at that appointment, he explained that his "constipation, abdominal pain and . . . serious gas" due to soy consumption continued even after taking medication recommended by medical staff. JA031. He again explained that "[f]ood service will accommodate [a] non-soy diet tray upon a diet order" and "request[ed] to see a doctor." JA031. While medical staff referred him to a doctor, Pendleton persisted in requesting changes to his diet through at least September 30, 2021, when he wrote that he was still having allergy-related symptoms from the soy in his diet, that the stool softeners he had been prescribed did not help, and that he continued to request a soy-free diet. JA028-034. Over the course of 2014 alone, Pendleton sought medical attention due to his soy-related digestive distress on 13 occasions. *See* JA022-034. He never received an accommodation.

On October 14, 2021, Pendleton submitted a grievance, stating that he was being "forced onto another Religion's Religious dietary practice." JA013. He explained that the vegetarian, soy-based Diet Program did not represent his sincerely held belief in a God Centered Culture of Islam and that he was unable to eat soy

texturized protein.  JA013.  The following day, Pendleton's grievance was denied. The explanation given for the denial was as follows:  "The DCR mandated religious diet does meet nutritional and religious requirements of all religions.  You may choose to partake in the religious diet, or a regular diet.  It is your decision."  JA014. Pendleton submitted another grievance in March 2022.  *See* JA064.  But just as his medical services requests fell on deaf ears, so too did his grievances.

Pendleton now "refrain[s] from eating the inedible soy protein products," "but . . . cannot maintain an adequate diet, because he is not giv[en] a substitute" protein or caloric source.  JA073.  Because Defendants continue to refuse to provide Pendleton with a religiously-compliant diet that does not include soy or meat, he alleges he is able to consume, at most, 1,800 calories a day through the diet provided by Defendants.  JA079.  By contrast, he alleges other incarcerated people in the same facility receive a diet that allows them to consume in excess of 3,200 calories each day.  JA079.

### B.    Procedural History

On April 11, 2022, Pendleton, proceeding pro se, filed this suit under 42 U.S.C. § 1983 against WVDCR Commissioner Betsy Jividen, WVDCR Religious Services Director Clarence Rider, and MOCC Superintendent Donnie Ames.  In addition to completing the form complaint the Southern District of West Virginia provides incarcerated pro se plaintiffs, JA005, Pendleton submitted a series of

8

exhibits comprised of medical records, religious accommodation request forms, and a lengthy affidavit from Pendleton. *See* JA012. And, he referred the court to a second document filed alongside his complaint, which he styled as a "memorandum in support of" his complaint, for further information regarding his allegations. *See* JA065; JA009.

In relevant part, Pendleton alleged that WVDCR's Diet Program violated his rights under the First Amendment Free Exercise Clause and RLUIPA.[2] Pendleton alleged that he was being "forced or coerced to choose between violating a religious precept" or receiving "adequate nutrition," because consuming the soy products—the only protein provided in the Diet Program—caused him "vomiting, abdominal pains, digestive issues[, and] constipation," as well as other "complications." JA055-056. In his prayer for relief, Pendleton asked that he be "severed" from the Diet Program so that he would no longer be forced to consume soy products and instead would be permitted to follow his religiously mandated pescatarian diet. JA009.

Defendants moved to dismiss. Dkt. No. 15. While conceding that Pendleton had exhausted his administrative remedies pursuant to the Prison Litigation Reform Act, Dkt. No. 16 at 5-6, they contended that Pendleton could not prove that the Diet

---

[2] Pendleton also brought claims under the Equal Protection Clause and Establishment Clause. JA009. The district court granted Defendants' motion to dismiss as to those claims and Pendleton does not appeal that ruling.

Program "substantially burdens" his exercise of religious freedom under either RLUIPA or the Free Exercise Clause, *id*. at 6. In Defendants' only acknowledgment of Pendleton's soy allergy, they wrote that Pendleton "failed to put forth evidence of any medically diagnosed allergy to soy" and explained that "[i]f it were to be medically determined that [Pendleton] had a soy allergy, he would then be provided with a soy alternative under the Religious Special Diet." *Id.* at 11. Defendants did not mention or address Pendleton's alleged religious objection to eating soy.

While Defendants' motion to dismiss was pending, Pendleton filed a four-page motion requesting that he be severed from the Diet Program and put on a pescatarian diet "due to medical concerns and Objection to Defendants Motion to Dismiss." Dkt. No. 23 at 1. He argued that he had "proven" with medical records that "he is being forced to eat soy based products with indifference for his medical issues" and that a "jury could rationally find that [Pendleton] suffered an objectively serious deprivation caused by eating the soy based diet[]." Dkt. No. 23 at 2-3. Defendants characterized Pendleton's motion as merely restating arguments in his complaint and opposition to the motion to dismiss. Dkt. No. 27.

In a March 21, 2023 order, the district court resolved both pending motions in Defendants' favor. JA082. The district court concluded that Pendleton had not adequately alleged that his religious exercise was being substantially burdened "because he is not being 'forced' to consume soy products or any other food he is

10

forbidden to eat," "[n]or is he being denied food required by his religion."  JA097.
The court further noted that Pendleton could "remain on the Religious Special Diet
and not eat soy products or . . . switch to the regular diet and avoid eating the meat
or other foods that he claims are forbidden by his religious beliefs."  JA098-099.
And it suggested that "to the extent that [Pendleton] may be asserting that he does
not receive adequate nutrition from a lack of protein or other products he may choose
not to eat," he could "supplement his meals with protein and other items from the
commissary that meet his religious and dietary needs."  JA099.  The district court
held that this lack of a substantial burden doomed both Pendleton's RLUIPA and
Free Exercise claims.  JA099-101.

In addition, the district court characterized the motion for severance "as a
motion for preliminary and permanent injunctive relief."  JA108.  "[T]o obtain such
relief," the court explained, "[Pendleton] must demonstrate a likelihood of success
on the merits of his claims and that he has or will be irreparably harmed without
such relief."  JA108.  The district court explained that because it had held
Pendleton's complaint did not state a claim, Pendleton was not entitled to either form
of injunctive relief.  JA108-109.

On April 4, 2023, Mr. Pendleton timely appealed.  JA111.

11

## SUMMARY OF ARGUMENT

Pendleton has alleged that he is religiously forbidden from eating meat and soy. And he alleges that Defendants have refused to provide him with a diet that does not contain either meat or soy and that provides him sufficient calories and protein. He further alleges—and Defendants concede—that WVDCR is willing and able to provide such a diet for medical reasons. These allegations plainly state a claim under both RLUIPA and the Free Exercise Clause. Yet the district court failed to follow this Court's long-standing precedents and erroneously dismissed Pendleton's complaint on the ground that Pendleton's religious exercise had not been "substantially burdened"—a required element of claims under both RLUIPA and the Free Exercise Clause. That was reversible error.

I.A. The district court erroneously dismissed Pendleton's claim under RLUIPA, which prohibits prisons from imposing a "substantial burden" on prisoners' religious exercise unless it is the "least restrictive means of furthering [a] compelling governmental interest," 42 U.S.C. § 2000cc-1(a). In so doing, the district court disregarded this Court's repeated holdings that prison officials substantially burden the religious exercise of incarcerated people when they refuse to provide them with a religiously compliant diet that also satisfies their nutritional needs. *See, e.g., Carter v. Fleming*, 879 F.3d 132, 140 (4th Cir. 2018). Because Pendleton alleged that Defendants had refused to provide him with a diet that provides him

12

adequate nutrition without meat or soy products, he has plausibly alleged that he faces precisely the kind of "rock and a hard place" dilemma that this Court has recognized as a "substantial burden" on a plaintiff's religious exercise. *Richardson v. Clarke*, 52 F.4th 614, 624-625 (4th Cir. 2022).

The district court ignored these precedents and fashioned a new, substantially higher standard out of whole cloth. First, it incorrectly characterized the substantial burden inquiry as requiring that a plaintiff actually be "forced" to consume religiously forbidden foods. Second, the district court suggested that Pendleton's religious exercise was not substantially burdened because he could simply purchase supplemental meals from the prison's commissary. But these two requirements are divorced from this Court's "substantial burden" precedents, which focus on the coercive power of the prison's policies and not whether the plaintiff actually violated his religious tenets or was able, even via extraordinary means, to alleviate the burden. In addition, because the coercive pressure of the prison's policies remains significant—even if Pendleton elects malnourishment over heresy and even if the indigent Pendleton could theoretically purchase supplements from the commissary—those policies still substantially burden Pendleton's religious exercise.

B.  Pendleton has also carried his burden at the pleading stage as to RLUIPA's other requirement—namely, that the substantial burden on his religious beliefs is not

13

the "least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1. Defendants did not move to dismiss on this ground and so have waived the argument. Nor could they prevail if this Court were inclined to overlook their forfeiture. To start, this Court has suggested that plaintiffs do not need to plead facts with respect to this portion of the analysis because the defendant bears the sole burden on the question. *Jehovah v. Clark*, 798 F.3d 169, 179 (4th Cir. 2015). And, in any event, Pendleton alleges—and Defendants *concede*—that Defendants would and could provide the diet he requests upon a doctor's note, but they refuse to do so in order to accommodate his religious beliefs. Pendleton therefore has at least plausibly alleged that the burden on his religious beliefs is not the least restrictive means of furthering a compelling government interest. *See Yellowbear v. Lampert*, 741 F.3d 48, 60 (10th Cir. 2014) (Gorsuch, J.) (explaining that a prison's disparate treatment of secular and religious requests for accommodations raises the inference of impermissible discrimination towards or indifference to religion).

II. The district court also erroneously dismissed Pendleton's Free Exercise claim. To state a free exercise claim, Pendleton must plausibly plead a "substantial burden" on his religious beliefs, just as under RLUIPA. *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019). Accordingly, the district court's Free Exercise Clause analysis suffers from the same legal errors as its RLUIPA analysis. And, as with Pendleton's RLUIPA claim, Defendants moved to dismiss his claim based solely on

the substantiality of the burden and have conceded that they could and would accommodate his request were it made for other, non-religious reasons. Pendleton therefore has also adequately pleaded the remainder of his Free Exercise Clause claim, which requires plausibly alleging that the Defendants conduct was not "reasonably related to a legitimate penological interest." *Jehovah*, 798 F.3d at 181.

III. Finally, because the district court denied Pendleton's motion to sever based on its erroneous holding that Pendleton had failed to state any claims for relief, this Court should vacate that order and remand to the district court for further consideration of Pendleton's motion.

## STANDARD OF REVIEW

This Court reviews "a district court's grant of a motion to dismiss de novo." *Stevens v. Holler*, 68 F.4th 921, 930 (4th Cir. 2023) (citation omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). The "plausibility standard requires only that the complaint's factual allegations 'be enough to raise a right to relief above the speculative level." *Id.* (quoting *Houck v. Substitute Trustee Serv., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)) (internal quotation marks omitted). In evaluating the complaint, the court must accept all factual allegations as true and must "draw all

reasonable inferences in favor of the plaintiff." *Id.* "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." *Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017).

## ARGUMENT

Pendleton alleges that, due to his religious beliefs, he cannot eat meat or soy. And he has alleged that he is allergic to soy and suffers severe gastrointestinal distress when he consumes soy. Defendants have repeatedly denied his requests for a diet that contains neither meat nor soy, forcing plaintiff to choose between violating his religious beliefs, suffering gastrointestinal distress from eating soy products, or consuming an inadequate number of calories. This Court has repeatedly recognized that "[u]nder the Free Exercise Clause and RLUIPA in its most elemental form, a prisoner has a 'clearly established . . . right to a diet consistent with his . . . religious scruples.'" *Lovelace v. Lee*, 472 F.3d 174, 198-99 (4th Cir. 2006) (citation omitted). And that religiously compliant diet must provide adequate nutrition. Yet the district court applied the wrong legal standard under both RLUIPA and the First Amendment and erroneously held that because Pendleton had not been "forced" to eat soy, his religious beliefs had not been substantially burdened. This Court should reverse that error.

16

## I.  PLAINTIFF'S COMPLAINT STATES A CLAIM UNDER RLUIPA

"Congress enacted RLUIPA to preserve the right of prisoners to raise religious liberty claims." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 718 (2014).  To prevail on a claim under RLUIPA, the plaintiff must show that "the challenged policy 'implicates his religious exercise,'" *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022) (citation omitted), and that "the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019).  The burden shifts to defendants "to show that [the] policy satisfies strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest." *Richardson*, 52 F.4th at 622.

At the pleading stage, a plaintiff must plausibly allege that the prison's policy implicates his religious exercise and imposes a substantial burden on it, but need not attempt to predict the state's compelling interest and least-restrictive-means arguments.  *Jehovah v. Clarke*, 798 F.3d 169, 179 (4th Cir. 2015) (citing 42 U.S.C. § 2000-cc-2(b)).  To survive a motion to dismiss, therefore, a plaintiff "need only plead facts tending to show a substantial burden on his exercise of sincerely held religious beliefs."  *Id.*  Pendleton's allegations that Defendants have refused to provide him with a nutritionally sufficient, religiously compliant diet easily satisfy that standard, and (although unnecessary at the pleading stage) Pendleton has also

17

pleaded facts raising a plausible inference that Defendants' policy is not the least restrictive means of furthering any compelling interest.

### A. Pendleton Plausibly Alleged That the Diet Program Substantially Burdens His Sincerely Held Religious Beliefs.

Pendleton has alleged a substantial burden on his religious exercise because he alleges that Defendants refuse to provide him a nutritionally adequate diet that complies with his religious beliefs. The Supreme Court has long held that a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," or forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand," *Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), and *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)) (alterations in original). Put simply, policies that put a plaintiff "between the proverbial rock and a hard place" substantially burden the plaintiff's religious beliefs under RLUIPA. *Richardson*, 52 F.4th at 624.

1. This Court has repeatedly held that prison policies that deny plaintiffs religiously compliant diets impose a substantial burden on the exercise of religious beliefs. *See, e.g.*, *Carter v. Fleming*, 879 F.3d 132, 140 (4th Cir. 2018); *Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *3 (4th Cir. June 17, 2022). That makes sense: Few things could put more "pressure on an adherent to modify his behavior

18

and to violate his beliefs" than the prospect of being deprived of adequate nutrition. *Lovelace*, 472 F.3d at 187 (quoting *Thomas*, 450 U.S. at 718). Accordingly, this Court, like its sister circuits, has recognized that "a prisoner has a right to a nutritionally adequate diet that is consistent with his religious beliefs." *Coleman*, 2022 WL 2188402, at *5 (citing *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014), and *Ross v. Blackledge*, 477 F.2d 616, 619 (4th Cir. 1973)). And denial of such a diet constitutes a substantial burden on those beliefs.

Pendleton alleges that Defendants have substantially burdened his religious beliefs by forcing him to choose between following his religious beliefs or receiving adequate nutrition. According to the complaint, Defendants have offered Pendleton just two options: He may participate in the regular diet, which regularly contains meat he cannot eat for religious reasons. JA014. Or he may partake in the Religious Diet Program, which relies on soy products for protein, which he also cannot eat for both medical and religious reasons. JA014; JA067. No substitutions are permitted under either option. JA014. As a result, he alleges that he consumes at most 1800 calories per day—just over half of what the prison provides via the regular diet— and cannot eat the primary source of protein served to him. *See* JA079. Because Mr. Pendleton has alleged that he must choose between meeting his basic dietary needs and complying with his sincerely held religious beliefs, he has plausibly

19

alleged that the prison's policy substantially burdens those beliefs.[3]  *See, e.g., Carter*, 879 F.3d at 140 (finding standard prison diet to substantially burden plaintiff's religious practice where plaintiff's religion prohibits fried foods).

2.  In granting Defendant's motion to dismiss, the district court committed two legal errors.  First, the district court reasoned that Pendleton's religious exercise was not "substantially burdened" because has a "choice whether to remain on the Religious Special Diet and not eat soy products or he may switch to the regular diet and avoid eating the meat or other foods that he claims are forbidden by his religious beliefs."  JA098-099.  Because, the district court explained, Pendleton was not "forced" to eat soy (because he could instead elect to be deprived of adequate nutrition or eat other religiously forbidden foods), he was not "'forced' to violate his

---

[3] To the extent the district court expressed some skepticism that Pendleton's religious objection to eating soy was sincerely held, JA097, it could not, on a motion to dismiss, decline to take as true Pendleton's allegations that he had, for nearly a decade, objected to eating soy on religious grounds, *see* JA040.  And, in any event, Pendleton alleged that he is allergic to soy and suffers serious gastrointestinal distress when he eats it, *see, e.g.*, JA022-034, so a diet centered around soy does not provide Pendleton adequate nutrition, even if he were religiously permitted to eat it.  Courts of appeals have held that plaintiffs' religious beliefs are substantially burdened where they are allergic to or otherwise medically cannot eat the religiously compliant food that the prison provides.  *See Blair v. Raemisch*, 804 F. App'x 909, 918 (10th Cir. 2020) (finding a substantial burden where the religiously-compliant vegan food provided by the prison caused "gastrointestinal distress"); *cf. Williams v. Annucci*, 895 F.3d 180, 185 (2d Cir. 2018) (requiring a prison to provide a diet that complies with plaintiff's religious beliefs and avoids foods to which he is allergic).

20

religious beliefs" and those beliefs therefore were not substantially burdened. JA099.

The district court's formulation of the substantial burden test disregards this Court's long-settled precedent. In *Ross v. Blackledge*, this Court allowed a First Amendment complaint from Muslim prisoners to proceed to an evidentiary hearing based on allegations that they could not "obtain a balanced diet by eating only non-pork items because of the frequency with which pork appears as the only meat on the prison menu and because most vegetables are cooked in or seasoned with pork." 477 F.2d at 617. In *Carter v. Fleming*, this Court reaffirmed that holding and held that a diet that failed to provide adequate nutrition via non-fried foods substantially burdened the religious beliefs of a plaintiff whose religion prohibited fried foods. 879 F.3d at 140. And, just last year, this Court again reaffirmed in *Coleman v. Jones* that a plaintiff's religious beliefs were substantially burdened where the vegetarian diet provided to accommodate his religious beliefs "left him malnourished, unhealthy, and too weak to pray properly." 2022 WL 2188402, at *1.

In each of these cases, as here, the plaintiffs, in theory, could have chosen not to eat the offending foods—but they alleged that they would not have received adequate nutrition had they done so. And, in each of these cases, this Court found that coercive choice to substantially burden the plaintiff's religious beliefs. So too

here.  Because the district court failed to follow these precedents, it committed legal error.

Second, the district court's suggestion that the burden was not substantial because the plaintiff could simply "supplement his meals with protein and other items from the commissary" is equally wrong.[4]  JA099.  The fact that a plaintiff can pay to reduce effects of the governmental burden on their religious exercise does not mean that that religious exercise is not substantially burdened.  *See Hobby Lobby Stores, Inc.*, 573 U.S. at 722 (rejecting arguments that the plaintiff's religious exercise was not burdened because it could expend additional resources to avoid being burdened).  Accordingly, courts of appeals have held that the availability of religiously compliant food for purchase from the commissary does not alleviate the substantial burden imposed by a prison's refusal to provide nutritionally-adequate, religiously-compliant meals.  *See Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019); *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 793-794 (5th

---

[4] The district court also improperly inferred that Pendleton could, in fact, alleviate the caloric and protein deficit caused by Defendant's policies via food purchases from the commissary.  But the complaint makes no allegation permitting such an inference, and instead merely attaches Defendant's own policy that states recipients of the Religious Diet Program are permitted to purchase additional, compliant foods from the commissary "if they are readily available."  *See* JA046-047.  The policy does not contain any information regarding the nutritional value of that food or whether there are protein sources that contain neither meat nor soy—i.e., protein sources that Pendleton can eat—available for purchase.  The district court therefore improperly drew inferences in favor of Defendants in deciding their motion to dismiss.  *See Stevens*, 68 F.4th at 930.

22

Cir. 2012); *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000); *see also Beerheide v. Suthers*, 286 F.3d 1179, 1188 (10th Cir. 2002).

These decisions recognize that the coercive effect of the government's refusal to accommodate the plaintiff's religious beliefs does not disappear simply because some plaintiffs might be able to throw money at the problem. Even if a plaintiff could, in theory, supplement their meals with purchases from the commissary, Pendleton must still "choose between following the precepts of [his] religion and forfeiting [governmental] benefits" in the form of adequate nutrition provided by the prison. *Lovelace*, 472 F.3d at 187 (citation omitted); *see also Carter*, 879 F.3d at 140. And the coercive effect of that choice is especially unaffected by the availability of food for purchase where, as here, the plaintiff is indigent. *See Jones*, 915 F.3d at 1150 (collecting cases); *see also* Dkt. No. 5 (district court order allowing Pendleton to proceed *in forma pauperis*).[5] Thus, the district court applied the incorrect legal standard when it relied on the availability of commissary food in holding that Pendleton had not adequately alleged a substantial burden on his religious exercise.

---

[5] The Court may take judicial notice of the district court's order concerning plaintiff's application to proceed *in forma pauperis*. *See Progressive N. Ins. Co. v. Y.E.*, No. 20-2191, 2022 WL 670871, at *2 n.1 (4th Cir. Mar. 7, 2022) (citing *Lolavar v. de Santibanes*, 430 F.3d 221, 224 & n.2 (4th Cir. 2005)) (taking judicial notice of docket sheets and docket entries in related state-court proceedings).

**B.** **Pendleton Has Plausibly Alleged That Defendants' Conduct Does Not Further A Compelling Governmental Interest by the Least Restrictive Means.**

As discussed above, a plaintiff who has plausibly alleged a substantial burden on religious exercise need not allege facts relating to Defendants' ultimate ability to satisfy their burden of demonstrating that the challenged policy is the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc-1(a)(2); *id.* § 2000cc-2(b); *Jehovah*, 798 F.3d at 179 (4th Cir. 2015) ("To state a RLUIPA claim, [plaintiff] need only plead facts tending to show a substantial burden on his exercise of sincerely held religious beliefs." (citing 42 U.S.C. § 2000cc-2(b))); *accord. LaVergne v. Stutes*, No. 19-30842, 2021 WL 2877789, at *6 (5th Cir. July 8, 2021). But in all events, Pendleton has plausibly alleged that Defendants' policy is not the least restrictive means of furthering a compelling interest.

1.     As an initial matter, Defendants did not move to dismiss on the grounds that Pendleton should have, but failed to, adequately plead the absence of a compelling interest or narrow tailoring. Defendants therefore may not now argue for affirmance on that ground. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) ("[A]bsent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal." (citation omitted)).

2.     In any event, Pendleton has plausibly alleged that forcing him to choose between meals based on soy or meat is not the least restrictive means of furthering

24

a compelling interest.  Pendleton alleges that Defendants do provide a non-soy alternative protein source for the religious Diet Program to prisoners with diet orders from the medical unit.  *See* JA031.  Pendleton also alleges that at least one other prisoner currently receives a soy alternative as the primary protein source as part of the religious Diet Program.  *See* JA054.  Pendleton alleges that the prison has "leftovers all of the time" from the regular meals, so he could at least be served fish when fish is served or otherwise supplement or substitute his meals via those leftovers in order to receive adequate nutrition. *See* JA071.  Even if Pendleton did bear the burden at the pleading stage of plausibly alleging that Defendants' policies and practices are not the least restrictive means of furthering a compelling government interest, Pendleton has carried that burden.

Indeed, Defendants' own arguments below confirm the point.  Defendants contended that "[i]f every inmate alleged the same, Defendants could be required to customize countless numbers of 'religious diets'" and "[i]t would not be feasible for Defendants to meet such demands when considering security constraints, cost, and the orderly running of all the WVDCR facilities."  Dkt. 16 at 11.  But Defendants fatally undercut that assertion later in the very same paragraph when they conceded that they could and would provide Pendleton "with a soy alternative under the Religious Special Diet" if they had "medically determined that [Pendleton] had a

soy allergy."⁶  Dkt. 16 at 11.  In other words, according to Defendants, it is the *reason* for the accommodation, not its nature, that prevents Defendants from granting it to Pendleton.

In sum, Pendleton alleges—and Defendants concede—that the prison can accommodate the kind of meal customization that Pendleton seeks to accommodate medical dietary restrictions, but not religious ones.  This concededly disparate treatment of religious and non-religious bases for dietary substitutions is plainly sufficient to clear the plausibility bar.  *See Yellowbear*, 741 F.3d at 60 (Gorsuch, J.) (explaining that the fact that "the prison grants secular exceptions more readily than religious exemptions . . . raise[s] the inference . . . that its most compelling interest may actually be discrimination against, or at least indifference to, the religious liberties of incarcerated persons").

## II.    PLAINTIFF'S COMPLAINT STATES A CLAIM UNDER THE FREE EXERCISE CLAUSE

Pendleton has adequately pled a free exercise claim for much the same reasons that apply to his RLUIPA claim.  Courts consider Free Exercise claims under a two-part analysis similar to RLUIPA claims.  The first stage, at which "the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs," "is essentially the same for both claims."  *Wright*,

---

⁶ This is an especially curious concession in light of Pendleton's long-documented gastrointestinal distress when consuming soy products.  *See* JA022-034.

921 F.3d at 418; *see also Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) ("While RLUIPA does not define 'substantial burden,' we have held that the term has the same meaning as it does in the First Amendment context."). Thus, for the same reasons the court erred in holding that Pendleton had not adequately alleged that Defendants had substantially burdened his religious exercise under RLUIPA, *see supra* p. 24-26, the court erred in reaching that conclusion under the First Amendment.

The second stage of the inquiry differs from RLUIPA: "Under the First Amendment, the plaintiff has the burden to show that the policies at issue are not 'reasonably related to legitimate penological interests.'" *Wright*, 921 F.3d at 418 (quoting *Jehovah*, 798 F.3d at 176). Thus, at the pleading stage, Pendleton must "include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). This Court has characterized this requirement as a "low bar." *Jehovah*, 798 F.3d at 180.

Pendleton has plausibly alleged that the prison's refusal to provide him a religiously compliant, nutritionally adequate diet is not reasonably related to legitimate penological interests. A prison regulation is reasonably related to a legitimate penological interest if it satisfies the four factors established in *Turner v. Safley*, 482 U.S. 78 (1987).

That test asks: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall*, 741 F.3d at 499 (quoting *Lovelace*, 472 F.3d at 200). In the context of religious dietary restrictions, this Court has held that prisoners "are entitled to religious dietary accommodations absent a legitimate reason to the contrary," and prison officials must "act reasonably in administering that right." *Id.* at 502-03.

Again, Defendants did not move to dismiss on these grounds, instead focusing on the substantiality of the burden. They have therefore waived any argument that Pendleton has not adequately alleged the absence of a reasonable relation to a legitimate penological objective. *See In re Under Seal*, 749 F.3d at 285. And, again, given Defendants' admission that they would accommodate a prisoner's need for a non-soy alternative protein source in the Religious Diet Program for medical, but not religious reasons, and that Pendleton has alleged that there are leftovers at each meal that he could use to supplement his diet, *see supra* p. 24-26, it is at least plausible that Defendants' refusal to provide that accommodation to Pendleton was "not reasonably related to legitimate penological interests." *See Yellowbear*, 741 F.3d at 60.

### III. THE COURT SHOULD VACATE AND REMAND THE DISTRICT COURT'S DECISION ON THE MOTION TO SEVER

In denying Pendleton's Motion to Sever, the district court construed the motion as one for both preliminary and permanent injunctive relief and held that, for the same reasons Pendleton had not stated a claim, he was unlikely to prevail on the merits. *See* JA108. Although Pendleton's motion is admittedly ambiguous in whether it seeks additional relief at all and, if so, whether the relief sought is a preliminary or permanent injunction, *see* Dkt. 23, this Court should vacate the district court's denial of the motion because that ruling rests on the same legal errors as its dismissal of the complaint. *See supra*. And, because the district court therefore never made any findings as to the other preliminary injunction factors, including irreparable harm, the balance of the equities, or the public interest, this Court should vacate the denial of the motion and remand so that the district court may do so in the first instance.

### CONCLUSION

Pendleton respectfully requests that this Court reverse the district court's dismissal of his complaint, vacate the district court's denial of Pendleton's motion to sever, and remand to the district court for further proceedings.

DATED: July 7, 2023

By:  /s/ Helen E. White

Helen E. White
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
 Suite 500 E
Washington, DC 20001
(202) 220-1100
Helen.White@mto.com

Samuel David Kinder Weiss
RIGHTS BEHIND BARS
416 Florida Ave NW
 Suite 26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Ricky Vincent Pendleton*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Circuit Rule 32-1, I certify that

the attached motion is proportionally spaced, has a typeface of 14 points and contains

6,966 words.

DATED: July 7, 2023                MUNGER, TOLLES & OLSON LLP

                                   By: */s/ Helen E. White*
                                        Helen E. White
                                        *Counsel for Ricky Vincent Pendleton*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system, which sent notification of such filing to all registered CM/ECF users.

DATED:  July 7, 2023                    MUNGER, TOLLES & OLSON LLP

                                        By: */s/ Helen E. White*
                                            Helen E. White
                                            *Counsel for Ricky Vincent Pendleton*

32