No. 23-6334

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICKY VINCENT PENDLETON,

*Plaintiff-Appellant,*

v.

BETSY C. JIVIDEN, Commissioner, WV Division of Corrections and Rehabilitation; CLARENCE J. RIDER, Religious Service Director, WV Division of Corrections and Rehabilitation; DONNIE AMES, Superintendent, Mount Olive Correctional Complex and Jail,

*Defendants-Appellees.*

On Appeal From The United States District Court
For The Southern District Of West Virginia
Case No. 2:22-cv-00178 (Judge Goodwin, J.)

## APPELLEES' RESPONSE BRIEF

PATRICK MORRISEY
  *Attorney General*

OFFICE OF THE WEST
VIRGINIA ATTORNEY
GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
lindsay.s.see@wvago.gov

LINDSAY S. SEE
  *Solicitor General*
  *Counsel of Record*

MICHAEL R. WILLIAMS
  *Principal Deputy*
  *Solicitor General*

SPENCER J. DAVENPORT
  *Assistant Solicitor General*

JODI B. TYLER
  *Assistant Attorney General*

*Counsel for Appellees*

# TABLE OF CONTENTS

Introduction ................................................................................... 1

Jurisdictional Statement ................................................................ 3

Statement of the Issues ................................................................. 3

Statement of the Case ................................................................... 3

Summary of the Argument .......................................................... 12

Standard of Review ..................................................................... 13

Argument ..................................................................................... 15

I.    Pendleton Failed To State A Claim Under RLUIPA .................... 15

    A.   Prison Diets with Restrictions Broader than a Particular
       Inmate's Religious Convictions Satisfy RLUIPA ...................... 17

    B.   Pendleton Did Not Adequately Allege that Either Diet Available
       to Him Is Nutritionally Deficient .............................................. 21

II.   Pendleton Failed To State A Claim Under The
    Free Exercise Clause .................................................................. 29

III.  The District Court Correctly Denied
    Pendleton's Motion to Sever ...................................................... 33

Conclusion ................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdullah v. Fard*,
173 F.3d 854, 1999 WL 98529 (6th Cir. 1999)
(unpublished table case) ................................................................. 19

*Amazon.com, Inc., v. WDC Holdings LLC*,
No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021) .................. 14

*Anderson v. Larry*,
No. 21-CV-944, 2021 WL 4745390 (N.D. Ill. Oct. 12, 2021)............... 26

*Anderson v. Larry*,
No. 21-CV-944, 2021 WL 5957420 (N.D. Ill. Dec. 16, 2021) ............. 22

*Baranowski v. Hart*,
486 F.3d 112 (5th Cir. 2007)........................................................ 16, 30

*Beerheide v. Suthers*,
286 F.3d 1179 (10th Cir. 2002) .......................................................... 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................ 13

*Billie v. Cnty. of Santa Barbara*,
No. 2:21-CV-03305, 2023 WL 3330321 (C.D. Cal. Mar. 31,
2023).............................................................................................. 22, 23

*Boyd v. Lehman*,
No. C05-0020-JLR, 2006 WL 1442201 (W.D. Wash. May
19, 2006)............................................................................................. 19

*Braunfeld v. Brown*,
366 U.S. 599 (1961)............................................................................ 28

*C.L. for Urb. Believers v. City of Chi.*,
342 F.3d 752 (7th Cir. 2003)............................................................. 17

ii

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Carter v. Fleming*,
  879 F.3d 132 (4th Cir. 2018)...........................................................26

*Centro Tepeyac v. Montgomery Cnty.*,
  722 F.3d 184 (4th Cir. 2013)...........................................................13

*Clark v. Dorvey*,
  No. 2:21-CV-02026, 2021 WL 2229725 (W.D. Ark. May 6,
  2021), *R&R adopted*, No. 2:21-CV-02026, 2021 WL
  2229060 (W.D. Ark. June 2, 2021) ..................................................19

*Coleman v. Jones*,
  No. 20-7382, 2022 WL 2188402 (4th Cir. June 17, 2022) ...........17, 26

*Cooper v. Lanham*,
  145 F.3d 1323 (4th Cir. 1998)..........................................................30

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005)..........................................................14, 17, 18

*Davis v. Harper*,
  No. 18-CV-1119-SMY, 2018 WL 4409955 (S.D. Ill. Sept.
  17, 2018).........................................................................................22

*Dean v. Corr. Corp. of Am.*,
  108 F. Supp. 3d 702 (D. Ariz. 2014) ...............................................31

*DePaola v. Va. Dep't of Corr.*,
  No. 7:12-CV-00592, 2014 WL 1766098 (W.D. Va. May 2,
  2014)...............................................................................................17

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir.
  2023)...............................................................................................13

*Donovan v. Tony & Susan Alamo Found.*,
  722 F.2d 397 (8th Cir. 1983)............................................................29

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ................................................................. 13

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ................................................................................ 13

*Firewalker-Fields v. Lee*,
   58 F.4th 104 (4th Cir. 2023) ........................................................ 17, 28

*Francis v. Giacomelli*,
   588 F.3d 186 (4th Cir. 2009) ............................................................... 13

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ................................................... 21, 25, 26

*Greenhill v. Clarke*,
   944 F.3d 243 (4th Cir. 2019) ............................................................... 27

*Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co.,*
   *LLC*,
   902 F.3d 432 (4th Cir. 2018) ............................................................... 32

*Holt v. Hobbs*,
   574 U.S. 352 (2015) ...................................................................... 15, 28

*Hudson v. Maloney*,
   No. Civ.A. 01-CV-12145, 2004 WL 626814 (D. Mass.
   March 30, 2004) ................................................................................... 19

*Jackson v. Hill*,
   128 F. App'x 595 (9th Cir. 2011) ........................................................ 19

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014) ............................................................... 13

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*James v. Va. Dep't of Corr.*,
   No. 7:16-CV-00442, 2018 WL 1528217 (W.D. Va. Mar. 28,
   2018) ................................................................................................ 19

*Jehovah v. Clarke*,
   798 F.3d 169 (4th Cir. 2015) ............................................................. 29

*Jones v. Carter*,
   915 F.3d 1147 (7th Cir. 2019) ........................................................... 27

*King v. Hooks*,
   No. 5:17-CT-3043-FL, 2021 WL 1435294 (E.D.N.C. Mar.
   29, 2021), *aff'd*, No. 21-6561, 2022 WL 355770 (4th Cir.
   Feb. 7, 2022) ..................................................................................... 18

*Konikov v. Orange County, Fla.*,
   410 F.3d 1317 (11th Cir. 2005) ......................................................... 17

*Linehan v. Crosby*,
   346 F. App'x 471 (11th Cir. 2009) ..................................................... 30

*Love v. Reed*,
   216 F.3d 682 (8th Cir. 2000) ............................................................. 27

*Lovelace v. Bassett*,
   No. 7:07-CV-00506, 2009 WL 3157367 (W.D. Va. Sept. 29,
   2009) ................................................................................................. 26

*Lovelace v. Lee*,
   472 F.3d 174 (4th Cir. 2006) .............................................. 28, 29, 30

*Marcum v. Jividen*,
   No. 2:20-CV-00394, 2020 WL 8771480 (S.D. W. Va. Nov.
   4, 2020), *R&R adopted*, No. 2:20-CV-00394, 2021 WL
   864769 (S.D. W. Va. Mar. 8, 2021) .................................................... 4

v

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Monteer v. ABL Mgmt., Inc.*,
No. 4:21-CV-756 ACL, 2021 WL 5298682 (E.D. Mo. Nov. 15, 2021) ................................................................................. 19

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
703 F.3d 781 (5th Cir. 2012) ............................................. 27

*Muhammad v. Wheeler*,
171 F. Supp. 3d 847 (E.D. Ark. 2016) ............................... 19

*Muslim v. Carmichael*,
No. 3:16-CV-433-FDW, 2019 WL 1795951 (W.D.N.C. Apr. 24, 2019) ............................................................................. 18

*O'Lone v. Estate of Shabazz*,
482 U.S. 342 (1987) ...................................................... 28, 29

*Owens v. Balt. City State's Att'y Off.*,
767 F.3d 379 (4th Cir. 2014) ............................................. 13

*Parks-El v. Fleming*,
212 Fed. App'x 245 (4th Cir. 2007) ................................... 15

*Patel v. U.S. Bureau of Prisons*,
515 F.3d 807 (8th Cir. 2008); ........................................... 19

*Rains v. Washington*,
No. 2L20-CV-32, 2020 WL 1815839 (W.D. Mich. Apr. 10, 2020) ................................................................................. 19

*Richardson v. Clarke*,
52 F.4th 614 (2022) ......................................................... 15

*Ross v. Blackledge*,
477 F.2d 616 (4th Cir. 1973) ......................................... 24, 33

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Scible v. Miller*,
No. 1:05-CV-166, 2007 WL 858618 (N.D. W. Va. Mar. 19, 2007) ............................................................................... 4

*Singleton v. Wulff*,
428 U.S. 106 (1976) .................................................................. 30

*Spies v. Voinovich*,
173 F.3d 398 (6th Cir. 1999) ................................................... 19

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981) .................................................................. 17

*Tillman v. Allen*,
187 F. Supp. 3d 664 (E.D. Va. 2016) ...................................... 28

*Turner v. Safley*,
482 U.S. 78 (1987) .............................................................. 28, 30

*Turner v. Tex. Dep't of Crim. Just.*,
836 F. App'x 227 (5th Cir. 2020) ............................................ 17

*Turner-Bey v. Maynard*,
No. JFM-10-2816, 2012 WL 4327282 (D. Md. Sept. 18, 2012) ...................................................................................... 18

*In re Under Seal*,
749 F.3d 276 (4th Cir. 2014) ................................................... 30

*United States v. Smith*,
395 F.3d 516, 519 (4th Cir. 2005) ........................................... 32

*Van Wyhe v. Reisch*,
581 F.3d 639 (8th Cir. 2009) ................................................... 28

vii

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Watts v. Byars,*
  No. 6:12-1867-JFA-KFM, 2013 WL 4736693 (D.S.C. Sept.
  3, 2013), *aff'd*, 551 F. App'x 77 (4th Cir. 2014)...................................18

*Welch v. Spaulding,*
  627 F. App'x 479 (6th Cir. 2015)........................................................25

*Williams v. Annucci,*
  895 F.3d 180 (2d Cir. 2018) ..............................................................23

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)...............................................................................32

*Yellowbear v. Lampert,*
  741 F.3d 48 (10th Cir. 2014)..............................................................22

**Statutes**

28 U.S.C. § 1291 .......................................................................................3

28 U.S.C. § 1331 .......................................................................................3

42 U.S.C. § 2000cc-1(a)...........................................................................15

**Other Authorities**

146 CONG. REC. 16699 (2000) ................................................................14

Federal Rule of Civil Procedure 12(b)(6) ................................................9

## INTRODUCTION

West Virginia's Division of Corrections and Rehabilitation (WVDCR) respects how critical religion is to many inmates' daily lives, and works to accommodate inmates of every religion. Food can be one of the more important ways many religious inmates live out their beliefs. And in that context, both the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment are clear: If eating foods an inmate's religion forbids is necessary to make a prison menu nutritionally sound, then the inmates need a different option. But the law is clear on the other side, too—failing to include items an inmate's faith allows, but does not require, is not a substantial burden on religious practice. So courts in this circuit and others consistently affirm prison policies that offer one alternate diet that accounts for many religions' tenets—even where (as here) that diet is more restrictive than a particular inmate might prefer or that his or her faith may permit.

The Religious Special Diet falls squarely in that category. WVDCR designed it to meet the religious dietary needs of all inmates in a cost-effective and administrable manner. The Diet excludes meat and fish, as well as eggs, onions, and mushrooms. Meeting the dictates of a range of faiths means that the Diet does not provide every food item a particular religion may allow. But, overseen by a dietician, it provides nutritionally adequate meals within the confines of the many religious practices that inmates in WVDCR's custody honor.

The district court was right to dismiss Ricky Pendleton's challenges to that policy. He did not allege that the Diet is infirm as a general matter. And his claims that it poses a substantial burden in his specific case fail, too. Everyone here agrees Pendleton can choose between two diets—the Religious Special Diet and the regular diet. He did not adequately allege that both of them would be nutritionally deficient if he avoids the items his faith forbids. And by Pendleton's own account, his aversion to soy-based products becomes a *religious* objection only because it causes him *medical* harm. Yet he has refused to go through the prison's process for a doctor to sign off on his asserted allergy. So Pendleton's objection to soy in the Diet doesn't fail because the district court wrongly probed the sincerity of his religious beliefs. It fails because Pendleton did not show how it would substantially burden his faith to take the same steps any other inmate would have to follow when seeking an accommodation grounded in a medical concern.

In short, though Pendleton would prefer a diet that tracks the full range of foods his faith permits, he hasn't shown any substantial burden from the two otherwise indisputably legal options WVDCR makes available to him. So the district court got it right to dismiss, recognizing that "RLUIPA does not give prisoners an unfettered right to religious accommodation." JA092. This Court should affirm and allow WVDCR to continue providing a religiously compliant diet in a cost-effective manner.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and this Court has jurisdiction under 28 U.S.C. § 1291. The district court granted WVDCR's motion to dismiss and denied Pendleton's motion to sever (which it characterized as a request for injunctive relief) on March 21, 2023. WVDCR agrees that Pendleton timely filed this appeal on April 4, 2023.

## STATEMENT OF THE ISSUES

1.    Was the district court right that Pendleton did not allege a substantial burden to his religious practice under RLUIPA when Pendleton refused opportunities to let a doctor confirm the soy allergy he asserts and did not allege facts showing that both menus available to him are nutritionally deficient?

2.    Was the district court right that Pendleton did not make out a claim under the Free Exercise Clause when he neither alleged a substantial burden to his religious practice nor showed how WVDCR's religious diet policy lacks a legitimate penological basis?

3.    Was the district court right to deny injunctive relief when Pendleton showed no likelihood of success on his claims and did not allege facts to support the other injunction factors?

## STATEMENT OF THE CASE

**A.** WVDCR accommodates the religious needs of inmates across a spectrum of faiths. For example, and as courts in West Virginia have

recognized, inmates can pray in their cells, access religious texts, and meet with volunteer religious leaders of their own faith. *See*, *e.g.*, *Scible v. Miller*, No. 1:05-CV-166, 2007 WL 858618, at *29 (N.D. W. Va. Mar. 19, 2007) (religious literature); *Marcum v. Jividen*, No. 2:20-CV-00394, 2020 WL 8771480, at *5 (S.D. W. Va. Nov. 4, 2020), *R&R adopted*, No. 2:20-CV-00394, 2021 WL 864769 (S.D. W. Va. Mar. 8, 2021) (religious leaders). WVDCR also allows inmates of specific faith groups "one special meal observance per year that is accepted as a common practice of that faith"—like the annual feast after Ramadan. JA046.

Religious diet is an area where accommodating WVDCR's diverse prison population can be challenging. Different religions have different dietary restrictions; among many examples, a kosher diet for Jewish inmates and a Brahman diet for members of the Hare Krishna. JA043. And sects within religions can have different dietary restrictions. As Pendleton explains here, for instance, some Muslims eat meat and others abstain. Opening.Br.4.

WVDCR takes these challenges seriously, along with the important religious interests behind them. The Religious Special Diet, introduced in 2014 through Policy Directive § 511.00, is WVDCR's current approach to accommodating inmates' religious dietary practices consistent with the needs of prison administration.

WVDCR created the Diet so inmates could "observe the religious dietary practice of their faith, within considerations for security

4

constraints and the cost effective and orderly running of the institution." JA046. It accomplishes this goal by offering a religious diet that meets the restrictions of all represented faiths as a voluntary alternative to the prison's regular menu. JA044. Because the Hare Krishna faith has the most stringent dietary restrictions, the Diet tracks its Brahman diet by avoiding meat, eggs, onions and other alliums, and mushrooms and other fungi. JA043. In this way, the Diet does not serve foods that any religion practiced across the WVDCR population forbids. It necessarily follows that the Diet does not "serve every food item a particular religion may allow." JA046.

WVDCR also recognizes that religiously compliant food is only good if it meets inmates' nutritional needs. So the policy requires a registered dietician to develop appropriate menus for the Diet that include healthy and varied foods. JA046. The policy also recognizes that "some food groups that different belief systems are permitted to eat will not be served" in the Diet, so an inmate may always "supplement his/her diet by purchasing allowable items … from the commissary." JA046-047.

Knowing that religious dietary laws don't always stop with the food itself, the Diet places special emphasis on preparation methods, too. Particular care is taken to train staff on Kosher and Halal certifications, for instance, as well as handling requirements for food and equipment to avoid cross contamination. *See* JA044-045. Preparing and serving food under the Diet involves different cooking, serving, and eating utensils,

which are stored separately and, "[w]hen necessary," ritually cleansed by a rabbi.  JA045.

Finally, the Diet is optional: "No inmate [is] compelled to participate in any religious special diet."  JA043.  To participate, inmates must submit a written request to the Chaplain of their facility or another designated staff member.  JA047.  If no request is submitted, inmates are placed on the "regular" diet.  JA014.

**B.**  Ricky Pendleton, an inmate at the Mount Olive Correctional Center, elected to participate in the Religious Special Diet.  JA040. Pendleton practices a "sincerely held belief of a God Centered Culture of Islam," which prescribes a "pescatarian" diet.  JA008.  Pendleton does not eat meat except for fish under 50 pounds.  JA073.  His faith does allow "all fruits, vegetables, herbs, spices, milk, [and] cheese."  JA052. Originally on a "no flesh" religious diet under WVDCR's prior policy, JA016, Pendleton transitioned to the new Diet in 2014, JA038.

Soon after the Diet went into effect in 2014, Pendleton sought an individualized menu.  He said that he could not "eat raw soy; textured soy protein; fermented soy products; and any other processed soy products, due to having digestive problems."  JA040.  His request was not granted.  Seven years later, he submitted a grievance seeking another individual accommodation.  JA013.  He explained his concern that he was being "forced onto another Religion's Religious dietary practice" because the Diet tracks the restrictions of a Brahman diet, which is more

6

restrictive than what Pendleton's religion allows.  JA013.  He also argued that he was "being coerced and substantially pressured … to eat soy texturized protein."  JA013.  Prison staff denied his grievance because the Diet met the "nutritional and religious requirements of all religions" and Pendleton could choose to go back to the regular diet at any time if its mix of proteins better served his needs and preferences.  JA014.

Pendleton's pleadings explain that his "religious tenets do not permit" him to eat "Pork; Red Meat; [and] Poultry," and that he is "Allergic to Soy Products."  JA020; *see also* JA038 ("My religious tenet is can not eat red meat, pork, chicken, and turkey.  Can eat fish, and do have digestive problems when eating soy products.").  In his request for an individualized accommodation from the Diet, Pendleton explained that eating soy is a religious issue not because his religion prohibits it generally, but because it has medical consequences for him—"For this reason it is considered 'Haram.'"  JA040.

Pendleton complained of a soy allergy throughout 2014 and received frequent medical attention for those complaints.  *See* JA022-036.  He was provided multiple medications and educational resources for treating the symptoms he alleged.  JA022-036.  But Pendleton refused at least twice—against medical advice—to be admitted to the infirmary for observation or additional testing to confirm a soy allergy.  JA035-036.  He similarly "declined nursing protocol" to follow up on his complaints.  JA036.  And though he underwent diagnostic testing and multiple

physical examinations, he has never been diagnosed in connection with his soy-related complaints. JA035-036. His records also show a "2lb wgt gain since 6/2/14 [and no] wgt loss." JA035.

With medical confirmation, Pendleton could receive a soy substitute while remaining on the Diet more generally. Dkt. 16, at 11. But because Pendleton has refused the same process available to other inmates seeking a diagnosis or to otherwise confirm medically based complaints, he remains on the unaltered Diet.

C. Pendleton sued Defendants Betsy Jividen, Commissioner of the WVDCR, Clarence J. Rider, WVDCR's Religious Service Director, and Donnie Ames, Superintendent of Mount Olive Correctional Center (collectively, WVDCR) in April 2022, seeking to be placed on a pescatarian diet. JA005-011. He alleged that the Diet violates RLUIPA, the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause. The claims center on his concern that he is "forced" to "consume soy products" and "forced to participate" in a diet based on other religions' restrictions that does not represent his "belief of a God Centered Culture of Islam, and a diet called a Pescatarian." JA008. He seeks relief to not "consume any soy products," to "sever [him] from this New Special Religious Diet Program" and, instead, "[t]o establish [his] Pescatarian diet" that would include "onions, tomatoes, and other prohibited vegetables (that other inmates can eat) and also fish." JA009.

Pendleton filed ten exhibits with his complaint, JA012-062, including a thirteen-page affidavit laying out his factual allegations, JA050-062. He also filed a "Memorandum of Law" that makes legal arguments and cites legal authorities for his RLUIPA and constitutional claims, and repeatedly cites the complaint exhibits to support its factual assertions. JA065-081. That document also says—without support from Pendleton's complaint, exhibits, or affidavit—that Pendleton told prison staff "of problems digesting the soy products given 95% of the time," JA067, and that he estimates his calories "at approximately 1,800 daily intake." JA079.

WVDCR moved to dismiss Pendleton's complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 15. Among other arguments, WVDCR explained how Pendleton had not adequately alleged that the Diet substantially burdens his religion—a required factor under both his RLUIPA and Free Exercise Clause claims. Dkt. No. 16.

Pendleton also filed a motion requesting to be severed from the Diet and for the prison to establish a pescatarian diet for him instead. Dkt. No. 23.

**D.** The district court granted the motion to dismiss and denied the motion to sever. JA082.

Starting with the RLUIPA claim, the district court recognized that "RLUIPA does not give prisoners an unfettered right to religious

accommodation." JA092. So while WVDCR must offer Pendleton a diet that does not "put substantial pressure" on him to "modify his behavior and to violate his beliefs," JA094 (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)), RLUIPA does not require WVDCR to "provid[e] him the diet of his choice." JA094; *see also* JA097-098 (collecting cases).

The district court pointed out that Pendleton's "contentions concerning the tenets of his religion are a moving target" because it was only "in his response" that he argued his alleged medical issues made soy religiously "forbidden." JA097. But the court construed his late assertion as true, and found, even so, that Pendleton "has not sufficiently alleged facts to establish that his religious exercise has been substantially burdened." JA097. Pendleton chose to be on the Religious Special Diet so was "not being 'forced' to consume soy products or any other food he is forbidden to eat." JA097. Nor did WVDCR deny him any "food required by his religion." JA097. And "to the extent that [Pendleton] *may* be asserting that he does not receive adequate nutrition from a lack of protein or other products he may choose not to eat," the court noted that he also had "not alleged that he cannot sufficiently and adequately supplement his diet." JA099 (emphasis added). Pendleton could "supplement his meals with protein and other items from the commissary." JA099.

Turning to the constitutional claims, the district court recognized that the "standard under RLUIPA is more stringent than that under the

First Amendment"—if a plaintiff cannot show a substantial burden "under the strict scrutiny required by RLUIPA, such a claim also fails under the Free Exercise Clause." JA091, JA100. So, "consistent with" the court's findings on "the failure of [Pendleton's] RLUIPA claim," it also found that the complaint "fail[ed] to state a plausible claim for relief" on free exercise grounds. JA100-101.

The district court also dismissed Pendleton's Establishment Clause claim that the Diet is unduly "friendly toward" certain religions. JA101-106. So too for Pendleton's Equal Protection Clause claim that he received disparate treatment compared to inmates who did not elect the religious diet and thus eat onions, fish, and other foods served on the regular menu. JA106-108. Pendleton does not appeal the dismissal of either of those claims. Opening.Br.9 n.2.

The district court denied Pendleton's separate motion for severance from the Diet, which the district court treated as a motion for preliminary and permanent injunctive relief. JA108-109. To succeed, Pendleton needed to "demonstrate a likelihood of success on the merits of his claims and that he has or will be irreparably harmed without such relief." JA108. Because the district court had already held that Pendleton's complaint did not state a claim, it explained that Pendleton was not entitled to either form of injunctive relief. JA108-109.

**E.** Pendleton timely filed this appeal. He challenges the district court's order granting WVDCR's motion to dismiss on the RLUIPA and

11

Free Exercise Clause claims and denying Pendleton's motion to sever. JA111.

## SUMMARY OF THE ARGUMENT

**I.**    Pendleton's RLUIPA arguments fail.  WVDCR developed the Religious Special Diet to meet the nutritional and religious needs of its inmate population.  It provides a balanced diet mindful of the dietary restrictions across the range of religions inmates practice.  And courts consistently uphold similar prison menus against RLUIPA challenges— even though they do not provide every food item a particular religion may allow.

Pendleton's complaint does not adequately allege that WVDCR's otherwise legal menu policy for religious inmates violates RLUIPA as applied to him.  As the district court explained, Pendleton "is not required to violate the tenets of his faith by eating the vegetarian diet provided through the Religious Special Diet," so "his religious exercise is not substantially burdened."  JA099.  Pendleton also failed to show that he had to choose between receiving adequate nutrition and following his religious beliefs.  He alleges that he cannot eat soy as a religious matter because it causes him medical harm, but he has refused opportunities to confirm his self-asserted diagnosis.  Pendleton did not allege that following that process—the same as other inmates would have to do— constitutes a substantial burden.  He also has not alleged facts sufficient to make out a claim that either the Religious Special Diet or the regular

diet would be nutritionally deficient if he chooses not to eat the items in each that his faith prohibits.

II.     The district court correctly dismissed Pendleton's Free Exercise Clause claim, too.  Like RLUIPA, the Free Exercise Clause requires the plaintiff to establish a substantial burden.  So Pendleton's constitutional claim is doomed for the same reasons as his statutory claim.  Beyond that, Pendleton has not adequately alleged that WVDCR's penological interests in maintaining a single alternate diet are unreasonable or illegitimate.

III.     The district court was also right to deny Pendleton's motion to sever him from the Religious Special Diet.  He agrees the lower court rightly construed that motion as a request for injunctive relief.  But because he failed to state any claim for relief, he cannot show likelihood of success on the merits.  Nor would there be grounds to remand if this Court concludes he did make out an adequate claim for relief: Pendleton did not explain below how he satisfied any of the injunction factors, so reconsideration would lead to the same result.

The Court should affirm.

## STANDARD OF REVIEW

This Court reviews a motion to dismiss ruling de novo.  *Owens v. Balt. City State's Att'y Off.*, 767 F.3d 379, 388 (4th Cir. 2014) (citation omitted).  The Court "accept[s] as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007),

13

as well as "draw[s] all reasonable inferences in [a plaintiff's] favor," *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  But to survive a motion to dismiss, the complaint "must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, Pendleton must present "more than a sheer possibility" that he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (cleaned up).

This Court reviews a district court's denial of a preliminary injunction for abuse of discretion, *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013), "examining all factual findings for clear error and legal conclusions de novo," *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023).  "Under this 'deferential standard,' [the appellate court] will not reverse absent a clearly erroneous factual finding or a mistake of law." *Amazon.com, Inc., v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *7 (4th Cir. Aug. 31, 2021).

14

## ARGUMENT

### I. Pendleton Failed To State A Claim Under RLUIPA.

Religion stands at the center of many Americans' lives. Our laws protect the right to practice different, sincerely held beliefs—whether someone is incarcerated or not. And WVDCR respects and takes seriously the need to allow for inmates' religious expression. But the law also recognizes the legitimate concerns that can arise when accommodating religious practices in a prison context. Prisons have a diverse religious population—Pendleton's God Centered Culture of Islam is only "one of the many sects of Islam," for example, Opening.Br.4, to say nothing of the other religions practiced across WVDCR institutions. And each religious sect can have different norms when it comes to living out faith. On top of that, penal institutions must "maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (quoting 146 Cong. Rec. 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA)).

Section 3 of RLUIPA strikes a balance between these concerns. Congress stepped in to fix a common problem that "frivolous or arbitrary barriers [were] imped[ing] institutionalized persons' religious exercise." *Cutter*, 544 U.S. at 716 (cleaned up). But it was mindful not to shift the pendulum too far in the other direction—it would be unworkable to create liability every time inmates claim imperfect conditions to practice their

15

faith. So RLUIPA walks that line, making it unlawful to "impose[] a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the government demonstrates" that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" it. 42 U.S.C. § 2000cc-1(a)(1)-(2).

An RLUIPA plaintiff must therefore show first that the challenged policy "implicates his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). That's generally a low bar, as "the religious practice does not have to be mandated by the religion in order for the burden to be found 'substantial,'" *Parks-El v. Fleming*, 212 Fed. App'x 245, 247 (4th Cir. 2007). But clearing the next hurdle is intentionally harder: The plaintiff must also show that the policy "imposed a *substantial* burden on his exercise of sincerely held religious beliefs." *Richardson v. Clarke*, 52 F.4th 614, 622 (2022) (emphasis added). Only if a claim reaches this "substantial burden" threshold does a court move to the second stage of the analysis, where "the government has the burden to show that its policy satisfies strict scrutiny." *Id.*

So although both parties can carry heavy burdens in RLUIPA cases, the government's becomes relevant only if the plaintiff clears his or hers first.[1] Here, the district court held that Pendleton did not. To make out

---

[1] WVDCR agrees that Pendleton need not allege WVDCR's dietary policy fails strict scrutiny. Pendleton *does* need to show a substantial burden,

an adequate RLUIPA claim, Pendleton had to allege how the Religious Special Diet substantially burdened his religious practice. But he doesn't allege that the Diet is suspect as a general matter. Nor does he explain how both diets available to him would be nutritionally deficient without the foods he objects to, or how getting medical confirmation for a self-diagnosed allergy rises to the level of a substantial burden. Because he can't make the necessary substantial burden showing, the district court was right that his RLUIPA claim fails.

### A. Prison Diets with Restrictions Broader than a Particular Inmate's Religious Convictions Satisfy RLUIPA.

Prison policies for accommodating religious dietary needs aren't new. And the Religious Special Diet falls in the heartland of policy options RLUIPA allows: It meets the needs of WVDCR's diverse religious inmate population in a fair, cost-efficient, and manageable manner. Courts routinely affirm similar meal plans against "substantial burden" claims—even when they do not provide every food a religion allows.

---

so the lower court was right to stop before that second stage in the analysis. But if this Court reverses, WVDCR anticipates a robust defense moving forward: "[M]aintaining good order and controlling costs" in a prison context "involves compelling governmental interests." *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007). And at least with respect to Pendleton's request for a "Pescatarian diet" that includes specific foods he prefers, JA009, strict scrutiny does not require prisons to tailor each inmate's meals to their individual religious preferences.

While RLUIPA does not define "substantial burden," the Supreme Court has recognized that the term reaches "exceptional" burdens on religious exercise. *Cutter*, 544 U.S. at 720. It's a burden that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). Or as this Court recently put it: "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023). By contrast, a burden is less than substantial when it imposes merely an "inconvenience on religious exercise." *DePaola v. Va. Dep't of Corr.*, No. 7:12-CV-00592, 2014 WL 1766098, at *2 (W.D. Va. May 2, 2014) (quoting *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005)). After all, "RLUIPA does not give prisoners an unfettered right to religious accommodation." *Turner v. Tex. Dep't of Crim. Just.*, 836 F. App'x 227, 230 (5th Cir. 2020). So courts rightly reject too-broad views of "substantial burdens" because they "would render meaningless the word 'substantial.'" *C.L. for Urb. Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003).

In the food context, these principles mean that "a prisoner has a right to a nutritionally adequate diet that is consistent with his religious beliefs." *Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *5 (4th Cir. June 17, 2022). They do not mean that inmates must "receive all the

food items that [they are] permitted to eat." JA097. (Pendleton does not argue otherwise on appeal, though he does not disavow his repeated requests below for a tailored "pescatarian" menu, either.) This rule makes sense: Pendleton is only one inmate, but individual accommodations to everyone who could raise a similar claim would get unwieldy fast. RLUIPA's focus on "due deference to the experience and expertise of prison and jail administrators" gives one reason to avoid that outcome. *Cutter*, 544 U.S. at 717 (citation omitted). More to the point, a menu without items a faith allows but does not require may be less-than-ideal, but it does not substantially burden religious practice. Any inmate who wishes the general prison menu were more varied would have a similar complaint.

So courts consistently uphold prison menus that do not include all of a particular religion's "cans" as long as they meet inmates' nutritional needs while avoiding the "can'ts." Courts in this circuit, for instance, "generally have found that the provision of a lacto-ovo vegetarian entrée" does not pose a substantial burden. *King v. Hooks*, No. 5:17-CT-3043-FL, 2021 WL 1435294, at *8 (E.D.N.C. Mar. 29, 2021), *aff'd*, No. 21-6561, 2022 WL 355770 (4th Cir. Feb. 7, 2022) (collecting cases). That's true even when inmates could eat Halal meat but the prison offers a "meat-free diet … that is acceptable under Islamic law" instead. *Turner-Bey v. Maynard*, No. JFM-10-2816, 2012 WL 4327282, at *8 (D. Md. Sept. 18, 2012). The key is that an inmate "is not asked to choose between

violating a religious precept or depriving himself of adequate nutrition." *Id.*; *see also*, *e.g.*, *Watts v. Byars*, No. 6:12-1867-JFA-KFM, 2013 WL 4736693, at *7 (D.S.C. Sept. 3, 2013), *aff'd*, 551 F. App'x 77 (4th Cir. 2014) (same); *Muslim v. Carmichael*, No. 3:16-CV-433-FDW, 2019 WL 1795951, at *17 (W.D.N.C. Apr. 24, 2019) (same). So a diet can respect inmates' religious beliefs consistent with RLUIPA even if it does not "conform to their personal preferences." *James v. Va. Dep't of Corr.*, No. 7:16-CV-00442, 2018 WL 1528217, at *8 (W.D. Va. Mar. 28, 2018).

That approach tracks other circuits', too. *See*, *e.g.*, *Jackson v. Hill*, 128 F. App'x 595, 597 (9th Cir. 2011) (upholding religious diet policies that provided for only vegetarian diets); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) (same); *Abdullah v. Fard*, 173 F.3d 854, 1999 WL 98529, at *1 (6th Cir. 1999) (unpublished table case) (same). An inmate may "dislike the alternate diet," but that "does not render it unreasonable or legally deficient." *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999).[2]

---

[2] District courts around the country speak with the same voice: RLUIPA doesn't require more than religiously compliant food that is adequately nutritious. *E.g.*, *Rains v. Washington*, No. 2L20-CV-32, 2020 WL 1815839 (W.D. Mich. Apr. 10, 2020) (finding vegan religious menu did not create substantial burden); *Clark v. Dorvey*, No. 2:21-CV-02026, 2021 WL 2229725, at *4 (W.D. Ark. May 6, 2021), *R&R adopted*, No. 2:21-CV-02026, 2021 WL 2229060 (W.D. Ark. June 2, 2021) (same); *Monteer v. ABL Mgmt., Inc.*, No. 4:21-CV-756 ACL, 2021 WL 5298682, at *5 (E.D. Mo. Nov. 15, 2021) (same); *Muhammad v. Wheeler*, 171 F. Supp. 3d 847, 855 (E.D. Ark. 2016) (same); *Hudson v. Maloney,* No. Civ.A. 01-CV-

The Religious Special Diet falls within that well-established category of acceptable religious menus. Yes, it is more restrictive than some (most) religions allow. But it is designed to be nutritionally sound while avoiding items forbidden by any of the religions that inmates in WVDCR's custody practice. JA046. RLUIPA requires more than this for a substantial burden. Pendleton's disappointment that he cannot choose a menu that excludes meat while including fish, tomatoes, and onions—*e.g.*, JA008, JA009, JA059, JA064, JA079, JA080—is not enough to take the Diet outside those presumptively legal bounds.

### B. Pendleton Did Not Adequately Allege that Either Diet Available to Him Is Nutritionally Deficient.

Against the raft of cases holding that policies like the Religious Special Diet satisfy RLUIPA, Pendleton had the burden to allege how that general rule doesn't apply in his specific case. The district court was right that he did not carry it.

1. Pendleton did not allege that the steps to document a soy allergy substantially burden his religion. To be sure, his original accommodation request seeks a religious exemption. This isn't a case where the district court improperly "expressed some skepticism" that the "religious objection to eating soy was sincerely held," Opening.Br.20 n.3—the lower

---

12145, 2004 WL 626814, at *1 (D. Mass. Mar. 30, 2004) (same). Again, they focus on whether the inmate is "require[d]" "to eat foods which are forbidden by his religion." *Boyd v. Lehman*, No. C05-0020-JLR, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006).

court took that allegation as true. JA097. Yet the court *also* took it on the terms Pendleton presented it: Pendleton consistently frames his soy aversion different than his religion's flat prohibition on eating red meat and poultry. *See* JA029, JA038. Avoiding soy becomes a religious concern for him—"it is considered 'Haram'"—only because of alleged medical issues when he eats it. JA040. So on Pendleton's own account, medical facts are a threshold issue before his beliefs have anything to say about soy.

And the district court got it right that "[a]lthough Plaintiff claims that he has an allergy to soy products, he does not allege that he has been affirmatively diagnosed as having such an allergy by prison medical staff (or any other medical provider); nor has he been given an order for a medically restricted diet by any medical provider." JA084. He doesn't argue on appeal that finding was incorrect. Even the exhibits to the complaint cut against him on this score: Diagnostic testing and multiple physical examinations didn't show a soy allergy or other medical issue. JA035-036. And since he attached those documents to support his claim, this Court should "credit[] the document[s] over conflicting allegations in the complaint." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). More than that, Pendleton has repeatedly refused steps that could help document his asserted allergy. He "declined nursing protocol" in response to his complaints on September 10, 2014. JA036. And on multiple occasions he refused admission to the infirmary so that his

symptoms could be monitored. JA035-036 (showing Pendleton refusing infirmary stays on June 16, 2014 and August 6, 2014).

So Pendleton is left with only allegations of medical symptoms that he attributes to soy. He's right that the Court takes the descriptions of his symptoms as true at this stage. But that does not mean WVDCR's policy to require more than self-diagnoses before providing accommodations is a substantial burden. Put differently, though a prison's "requirement of a soy allergy diagnosis" makes it "harder" to get "a religious diet that [i]s also soy-free with no questions asked," "no questions asked" is not RLUIPA's standard. *Billie v. Cnty. of Santa Barbara*, No. 2:21-CV-03305, 2023 WL 3330321, at *5 (C.D. Cal. Mar. 31, 2023).

Alleging a significant burden requires more. And the complaint lacks it. It does not allege that Pendleton cannot access a medical professional to document his symptoms and assess their connection to eating soy—Pendleton denied follow-up care. *Cf. Anderson v. Larry*, No. 21-CV-944, 2021 WL 5957420, at *7 (N.D. Ill. Dec. 16, 2021) (finding inmate "plausibly alleged that [defendant's] failure to provide kosher meals to which [inmate] is not allergic substantially burdens his religious beliefs" where prison required "positively documented allergy test" yet "denied [the inmate's] request" for one). Nor does it allege that any steps to document the claimed allergy would be futile. The parties agree that Pendleton could get an accommodation with documented medical need,

Opening.Br.25-26; Dkt. 16, at 11, so this is not a forced "choice between following [an inmate's] religious practice or adequate nutrition" in the face of a "well-documented allergy." *Davis v. Harper*, No. 18-CV-1119-SMY, 2018 WL 4409955, at *2 (S.D. Ill. Sept. 17, 2018) (finding prisoner complaint passed initial case screening). And Pendleton cannot rely on an "inference" of religious "discrimination" or "indifference" because WVDCR will grant a soy accommodation for medical reasons. *Yellowbear v. Lampert*, 741 F.3d 48, 60 (10th Cir. 2014) (quoted at Opening.Br.26). WVDCR is not saying "yes" to medical needs while refusing "to facilitate an inmate's religious needs" in the same way, *id.*: It doesn't grant dietary accommodations based on *any* inmate's self-diagnosis.

In short, Pendleton does not claim that WVDCR's meal plans are "nutritionally deficient" as a general manner, so his "only claim to burden" is "that the jail required him to obtain medical evidence of a relevant food allergy to qualify for a special diet." *Billie*, 2023 WL 3436080, at *5. But he "has no evidence, nor could there be any," to show that a "neutral allergy requirement" is a substantial burden to his faith. *Id.* The Court should affirm on this basis alone.

**2.** The Court should also affirm even if it credits Pendleton's claimed need for a soy-based accommodation. The complaint fails to adequately allege that both meal plans available to Pendleton are nutritionally deficient for him.

Pendleton faults the district court (at Opening.Br.20) for not giving more weight to his allegations that the Diet "force[s]" him to "consume soy products." JA008. But the court's analysis simply recognizes what's uncontested: Pendleton can pick either of the two available menus, and he can choose what to eat (or not) from specific meals on them. JA098-099 ("Plaintiff has a choice to remain on the Religious Special Diet and not eat soy products or he may switch to the regular diet and avoid eating the meat or other foods" his religion forbids). Pendleton never alleged he cannot eat around offending items on his plate, for example. *Cf. Williams v. Annucci*, 895 F.3d 180, 185 n.3 (2d Cir. 2018) ("To Williams, it is important that an item he cannot eat be removed from his tray because if it seeps onto other acceptable items it contaminates them."). So to show a substantial burden, Pendleton had to allege that *both* the Diet and the regular diet would be nutritionally inadequate if he chose not to eat the soy in one or the meat in the other. Here too, he did not.

*First*, take the regular menu. The complaint seems to assume that it is not an option, but Pendleton nowhere alleges that returning to the regular diet and avoiding meat would leave him malnourished. In contrast, the plaintiffs in *Ross v. Blackledge* alleged they could not "obtain a balanced diet by eating only non-pork items because of the frequency with which pork appears as the only meat on the prison menu and because most vegetables are cooked in or seasoned with pork." 477 F.2d 616, 617 (4th Cir. 1973). We don't have anything like that here.

25

And in fact, Pendleton's account suggests the regular diet could be a good fit for him, even with eating around red meat and poultry. It contains the "onions, tomatoes, and other vegetables" he wants, as well as fish. JA079. And recall that Pendleton's faith does not require a vegan diet: He is allowed to eat milk and cheese from the regular menu, JA052, which are also important protein sources.

*Second*, the conclusion holds for the Religious Special Diet. Nothing in Pendleton's complaint or exhibits alleges that the Diet would be inadequate if Pendleton avoided soy products. The closest he comes is when he alleges that "he consumes at most 1800 calories per day" and "cannot eat the primary source of protein served to him." Opening.Br.19 (quoting JA079). These assertions are not enough to allege substantial burden. For one thing, the 1800-calorie statement, along with a remark about soy served "95% of the time," JA067, come from Pendleton's "memorandum of law." Pendleton argues it should count as part of his complaint, but the rule applies to "documents that are explicitly incorporated into the complaint by reference." *Goines*, 822 F.3d at 166. His complaint says only "See Attached Memorandum of Law," JA008. And everything about the "memorandum of law" suggests Pendleton meant it to be exactly that: It cites cases for legal propositions and the complaint and exhibits for facts, JA065-081—including a self-affidavit which is where Pendleton set out his detailed factual case, JA050-062.

26

Regardless, alleging calorie count and soy's prevalence do not show Pendleton faces a substantial burden under the Diet. These unadorned allegations lack context to draw the inferences the RLUIPA claim requires. Soy may be a common menu item, for instance, but Pendleton doesn't allege it is the only protein source in a typical meal. He also doesn't compare calorie counts between the unmodified Diet and a modified version that avoids soy; his only comparison (again, in the memorandum of law) is to an alleged 3200 calories in the regular diet. JA079. But alleging that some inmates receive more calories does not show that Pendleton lacks enough to meet his specific health needs.

In reality, "nutritional adequacy is a multi-factored concept" turning on "daily caloric content, duration of the diet, and the nutritional needs of the prisoner." *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015). A district court in this circuit found that a 1500- or 1800-calorie diet could be a substantial burden when *that inmate* usually received 2800 calories daily—and also where he alleged "the difference in calories caused him hunger pains and 'hunger headaches' during the day that distracted from his religious observance." *Lovelace v. Bassett*, No. 7:07-CV-00506, 2009 WL 3157367, at *7 (W.D. Va. Sept. 29, 2009). Last year in *Coleman*, this Court similarly found a substantial burden where a meatless diet left the inmate "malnourished, unhealthy, and too weak to pray properly." 2022 WL 2188402, at *1; *see also Carter v. Fleming*, 879 F.3d 132, 140 & n.7 (4th Cir. 2018) (inmate alleged that "inclusion of

27

fried foods in the Common Fare menu prevented him from complying with his religion's dietary requirements," and objection that "remaining food might be sufficiently nutritious" was not raised until oral argument on post-summary judgment appeal).

Pendleton's allegations do not approach those levels. And again, what *is* in his complaint and exhibits undercuts his argument instead of helps it. *See Goines*, 822 F.3d at 167 (noting it "proper" to credit a document attached to a complaint "over conflicting allegations in the complaint"). Unlike the plaintiff in *Coleman*, for instance, who "lost between 15 and 25 pounds," 2022 WL 2188402, at *2, Pendleton gained two pounds in a short period at a time he "state[d] he cannot eat" because of soy-related concerns. JA035; *see also Anderson v. Larry*, No. 21-CV-944, 2021 WL 4745390, at *3 (N.D. Ill. Oct. 12, 2021) (inmate alleged he "lost significant weight and has experienced fatigue, numbness in his right leg, anger, and mood swings").

Finally, the district court was right that Pendleton's ability to supplement with items from the commissary to live out his faith to the fullest partially mitigates any burden. JA099. Pendleton argues that buying food separately does not erase the burden from not having "nutritionally-adequate, religiously-compliant meals." Opening.Br.22. And yes, inmates can make out substantial-burden claims if they must rely on the commissary for all of their meals, *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 793-94 (5th Cir. 2012), or otherwise "pay

daily for [a] religiously compliant diet[]." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019); *see also Beerheide v. Suthers*, 286 F.3d 1179, 1188 (10th Cir. 2002) (rejecting plan for inmates to co-pay for a kosher diet). But they must "exhaust alternative means," too, including an "obligat[ion] to spend any money [they] did obtain for food from the commissary" for religious purposes. *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). Especially where the Diet expressly notes that inmates may choose to supplement from the commissary, JA046-047, Pendleton's silence here is telling. Short of allegations that the Diet leaves him malnourished, the district court appropriately looked at all options when determining that he failed to show a "substantial" burden.

## II. Pendleton Failed To State A Claim Under The Free Exercise Clause.

Pendleton's First Amendment claim fails, too. Like RLUIPA claims, Free Exercise Clause claims require plaintiffs to establish a substantial burden on their religious practice. *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019). So the district court was right to reject Pendleton's constitutional claim for all the same reasons it found he failed to state a claim under RLUIPA. JA099-101. Pendleton cannot lose under RLUIPA yet win under the First Amendment. *See Tillman v. Allen*, 187 F. Supp. 3d 664, 675 (E.D. Va. 2016) (quoting *Van Wyhe v. Reisch*, 581 F.3d 639, 657-58 (8th Cir. 2009) ("Where an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial

burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well.")).

It is possible, though, to win an RLUIPA claim and still fail to state a claim for relief on free exercise grounds. So if the Court disagrees with the district court's RLUIPA holding, it should still affirm for two additional reasons.

*First*, a substantial burden under RLUIPA—with its "more searching standard of review"—may not be a substantial burden in this context. *Lovelace*, 472 F.3d at 186 (cleaned up); *see also Holt*, 574 U.S. at 361 (noting that "RLUIPA provides greater protection" than the Free Exercise Clause). Specifically, the Free Exercise Clause allows certain policies that burden religious practice provided the prison affords inmates other opportunities to exercise their faith. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987); *Turner v. Safley*, 482 U.S. 78, 90 (1987); *see also Firewalker-Fields*, 58 F.4th at 117 ("So this is not about whether Firewalker-Fields had the opportunity to engage in Friday Prayer on his terms, but rather whether he could generally engage in worship."). And generally, no substantial burden exists where the challenged policy makes religious practice possible, just more expensive. *See Braunfeld v. Brown*, 366 U.S. 599, 605 (1961) (finding that a law that "operates so as to make the practice of … religious beliefs more expensive" did not sufficiently burden plaintiffs under the Free Exercise Clause); *Donovan v. Tony & Susan Alamo Found.*, 722 F.2d 397, 403 (8th

Cir. 1983) ("[L]egislation otherwise legitimate does not violate the Free Exercise Clause merely because financial detriment results."). So even if Pendleton's ability to supplement his diet with items from the commissary were not enough to defeat an RLUIPA claim, it would still undercut his constitutional claim that a soy-forward menu poses a substantial burden.

*Second*, WVDCR's dietary policies are "reasonably adapted to achieving a legitimate penological objective." *Lovelace*, 472 F.3d at 200 (cleaned up). RLUIPA puts a strict-scrutiny burden on the State once an inmate shows substantial burden; not so for this claim. As the district court recognized, inmate free-exercise claims instead "turn[] on the reasonableness of the restriction" in the special context of prison administration. JA099-100; *see also*, *e.g.*, *O'Lone*, 482 U.S. at 351-52. And the challenger—not the State—"bears the burden" on the substantial-burden prong *and* in showing that the prison policy "is not rationally related to a legitimate penological interest." *Jehovah v. Clarke*, 798 F.3d 169, 179-80 (4th Cir. 2015).

Contra Pendleton's claims of waiver, Opening.Br.28, WVDCR raised this aspect of a Free Exercise Clause claim in moving to dismiss. Dkt. 16, at 12 (setting out the "appropriate inquiry" "whether the regulation 'is reasonably related to legitimate penological interests'" (quoting *Turner*, 482 U.S. at 89)). But even if WVDCR hadn't raised this aspect below, *In re Under Seal* applies to issues raised by an appellant

31

on appeal—not an appellee. 749 F.3d 276, 285 (4th Cir. 2014) (confining analysis to "what questions may be taken up and resolved for the first time on appeal" (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976))). This Court can *affirm* on any ground apparent from the record. *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005). So unlike *Lovelace*, for instance, where the inmate alleged that the challenged prison policy "fail[ed] to meet an objectively reasonable standard," 472 F.3d at 200, Pendleton has not alleged it's unreasonable for WVDCR to consider legitimate administrative concerns.

In reality, the materials Pendleton included with his complaint show that WVDCR has plenty of legitimate reasons for its dietary policies. For instance, WVDCR crafted the Religious Special Diet to ensure "that members of the inmate populate may pursue individual religious beliefs and practices as is consistent with the maintenance of security and good order." JA043. That's enough for First Amendment claims. *See Cooper v. Lanham*, 145 F.3d 1323 (4th Cir. 1998) (finding a prison had a legitimate interest in running a simplified food service and thus not providing kosher meals); *Baranowski*, 486 F.3d at 122 (same). Indeed, similar considerations can clear the much higher "compelling governmental interest" standard, too. *See*, *e.g.*, *Baranowski*, 486 F.3d at 125 (declining a request for a kosher plan was "related to maintaining good order and controlling costs and, as such, involves compelling governmental interests."); *Linehan v. Crosby*, 346 F. App'x 471, 473 (11th

Cir. 2009) (noting "compelling governmental interest in keeping costs down and preventing security risks"); *Dean v. Corr. Corp. of Am.*, 108 F. Supp. 3d 702, 716 (D. Ariz. 2014) (same).

Pendleton's proposals to serve him leftover fish or substitute specific ingredients in meals, JA070-071, is no real alternative in light of these legitimate penological interests. Providing special items on an individualized basis complicates prison administration and food service and increases costs. For instance, great care is taken to avoid cross contamination between the Religious Special Diet and the regular diet: Currently, religious meals are prepared in a separate area of the kitchen, using only cookware, utensils, and trays specified for religious meals, to balance the needs of other inmates' religious practice. JA045. So requesting substitutions from the regular diet poses additional challenges. Pendleton did not adequately allege that it's unreasonable for WVDCR to balance concerns like these against his request for an individualized diet.

## III. The District Court Correctly Denied Pendleton's Motion to Sever.

The district properly interpreted Pendleton's motion to sever him from the Religious Special Diet as a request for preliminary and permanent injunctive relief—and then properly denied it. JA108.

Pendleton says the district court's decision on his ambiguous motion "rests on the same legal errors as its dismissal of the complaint." Opening.Br.29. He's right that they are linked, but only to the extent

33

that if he did not make out a valid claim for relief then he also cannot clear the likelihood of success on the merits hurdle for an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (explaining four injunction factors). And as detailed above, Pendleton did not state a claim under RLUIPA or the Free Exercise Clause. That alone justified the district court's decision. *See Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (noting that, under *Winter*, "*each* of these four factors" are required for preliminary injunctive relief (emphasis in original)).

The Court should also reject Pendleton's request to remand because the district court "never made any findings as to the other preliminary injunction factors." Opening.Br.29. Lower courts need not "consider all four factors and their impact upon one another before denying preliminary injunctive relief." *Henderson*, 902 F.3d at 439 (cleaned up). That's because "[a] proper consideration of" one or more factors can be enough to "require[] denial of the requested relief." *Winter*, 555 U.S. at 23. And Pendleton did not argue below how he satisfied any of the factors. *See* Opening.Br.29 ("Pendleton's motion is admittedly ambiguous in whether it seeks additional relief at all, and if so, whether the relief sought is a preliminary or permanent injunction."). It's not the district court's job to make Pendleton's argument for him; the movant bears the burden to establish each factor. *Winter*, 555 U.S. at 20. And that burden is particularly high here, as courts grant injunctive relief

34

that would interfere with prison management under only "exceptional and compelling circumstances." JA090 (district court opinion; citations omitted).

Finally, remand would be futile because Pendleton is not entitled to the relief he seeks under any theory. Throughout his pleadings and in his motion to sever specifically, Pendleton asks for the "Establishment of his Pescatarian dietary practice." Dkt. 23, at 4. But even if he had made out valid claims for relief, and if the district court had deemed him likely to succeed, and if it had found the remaining factors weighed in his favor, then at most Pendleton would be entitled to a nutritionally adequate diet that doesn't rely on foods his religion forbids. *E.g.*, *Ross*, 477 F.2d at 619 (discussing State's responsibility to "provid[e] *some* satisfactory form of alternative diet" (emphasis added)). So however the lower court or this Court construes Pendleton's motion to sever from the Religious Special Diet, no legal theory would force WVDCR to establish an individually tailored diet for Pendleton that includes all of the foods his faith permits. Thus, the district court did not abuse its discretion by rejecting his motion. On this basis too, the Court should affirm.

## CONCLUSION

The Court should affirm the district court's order dismissing Pendleton's complaint and denying his motion to sever.

Respectfully submitted,

PATRICK MORRISEY
   ATTORNEY GENERAL

/s/ Lindsay S. See
Lindsay S. See
   *Solicitor General*
   *Counsel of Record*

Michael R. Williams
   Principal Deputy Solicitor
   General

Spencer J. Davenport
   Assistant Solicitor General

Jodi B. Tyler
   Assistant Attorney General

OFFICE OF THE ATTORNEY
GENERAL OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021

Dated:  September 11, 2023       *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.     This response brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 8492 words.

2.     This response brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Lindsay S. See
Lindsay S. See

37